Estil ORSBON, Plaintiff,

v.

The BALTIMORE AND OHIO RAILROAD COMPANY, Defendant.

Civ. No. 5787.

United States District Court
S. D. Ohio, E. D.
March 15, 1962.

Peter Vacca, of Maugan, Vacca & Braun, Columbus, Ohio, for plaintiff.

John D. Holschuh, of Alexander, Ebinger, Wenger & Holschuh, Columbus, Ohio, for defendant.

WEINMAN, Chief Judge.

## INTRODUCTION

This is an action for damages brought by Estil Orsbon against The Baltimore and Ohio Railroad Company as a result of a grade crossing accident which occurred September 3, 1958, at the crossing of State Route 596 and The Baltimore and Ohio Railroad Company track in Licking County, Ohio. The action was commenced in the Common Pleas Court of Franklin County, Ohio, in February, 1960, and was removed by the defendant to this Court by reason of the diversity in citizenship and amount in controversy.

The Court, upon considering the evidence presented, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Route 596, at the time of the accident in question, was a paved, black top, two lane highway extending in a general east and west direction and intersected the track of The Baltimore and Ohio Railroad Company in Licking County at a level grade and at approximately a right angle. The track was a single track and extended in a general north and south direction between Newark and Shawnee, Ohio.

2. The crossing was in a rural area and a standard railroad cross-arm warning sign bearing the words "Railroad Crossing" was located at the crossing.

3. Operators of motor vehicles approaching the crossing from the east had an unobstructed view of trains approaching from the north for a distance of at least one thousand one hundred feet (1,100') along the track (this being the distance from the crossing to the Route 40 viaduct located to the north of the crossing) when the operators reached a point on the highway across from a storage building located east of the crossing and north of the highway. This point of unobstructed view was approximately two hundred twenty feet (220') on the highway east of the crossing. A single tree was located to the east of the defendant's right of way and

north of the highway approximately two hundred thirty-nine feet (239') from the crossing, but this would not obstruct the view of an approaching railroad engine and cars. There were no obstructions to the view of an approaching train located on the defendant's right of way.

4. The plaintiff testified that his view was obstructed until he reached a point in the highway approximately ninety feet (90') or one hundred feet (100') east of the crossing. He described this point on the highway as being across from the building nearest to the crossing which he estimated was located one hundred feet (100') east of the crossing. This storage building, however, was actually two hundred twenty feet (220') east of the crossing. In any event, the plaintiff himself admitted that he had a view to the north of approaching trains at a point on the highway at least ninety feet (90') to one hundred feet (100') east of the crossing. The plaintiff also testified that at this point on the highway he had an unobstructed view to the north along the track for a distance of approximately one hundred feet (100') but that from that point on the track to the viaduct his view was obstructed by weeds and trees. Even if this testimony is accepted as true, any such obstructions become immaterial in view of the fact that the plaintiff, as hereinafter described, testified that when he first looked to the north he saw the approaching train and that the train was then ninety feet (90') to one hundred feet (100') from the crossing.

5. The plaintiff was familiar with this crossing and with any alleged obstructions to his view. He had traveled over this crossing approximately three hundred sixty (360) times in the three week period immediately preceding the accident in question in the course of hauling sand from a quarry on Route 13 to the construction site on Route 40.

6. On the day of the accident, September 3, 1958, the weather was clear and visibility was excellent. At approximately 1:00 P.M. that afternoon the plaintiff was operating a two and one-half ton tandem dump truck which was loaded with thirteen tons of sand which he was transporting from the quarry on Route 13 to the construction site on Route 40. He approached the crossing on Route 596, according to his own testimony, at a speed of approximately twenty-five (25) to thirty (30) miles per hour and according to his verified petition at a speed of thirty (30) miles per hour. At that speed and with that load, the plaintiff admitted that it would require a distance of one hundred feet (100') to one hundred fifty feet (150') to stop the truck, depending upon whether the load shifted when he applied the brakes. According to the plaintiff's testimony his view was obstructed until he reached a point ninety feet (90') to one hundred feet (100') east of the crossing and, assuming that this were true, he was admittedly traveling at a speed too great to stop his truck within that distance if, as in this case, a train happened to approach the crossing at that time.

7. The train in question consisted of a two unit diesel, seventeen cars, and a caboose. The train was approximately fifteen feet (15') in height and approximately eight hundred feet (800') in length. It approached the crossing at a speed of twenty-two (22) miles per hour. The headlight on the engine was burning (although it was a clear day, it was the practice of the railroad company to have the headlight on at all times); the diesel horn was sounded approximately one thousand feet (1,000') north of the viaduct which would be over two thousand feet (2,000') from the crossing of Route 596 and it was sounded continuously in the standard sequence of crossing warning sounds—two longs, one short and one long—until the collision in question; the bell was turned on over two thousand feet (2,000') from the crossing of Route 596 and it rang continuously until the collision in question.

8. The plaintiff testified that he did not look for any approaching trains until he reached a point approximately one hundred feet (100') from the crossing. When he did look at that point he saw

a train approaching from the north, traveling at a speed of approximately twenty-five (25) miles per hour and approximately ninety (90) to one hundred (100) feet north of the crossing at that time. He applied his brakes as soon as he saw the train and swerved to his left. The right front end of the plaintiff's truck and the left front end of the locomotive collided at a point off of the highway and south of the crossing. The truck operated by the plaintiff left one hundred twelve feet (112') of skid marks on the highway.

9. The building nearest to the crossing was approximately two hundred twenty feet (220') east of the crossing and if the plaintiff had looked at that point he could have seen the train approaching. As a matter of fact, the plaintiff testified that he *did* look when he reached this building and that he *did* see the train at that point. The skid marks—undisputed as to their existence and their length—show, however, that he either did not look and see the train until he was approximately one hundred feet (100') from the crossing, as he testified, or, if he did look and see the train when he was at the building two hundred twenty feet (220') from the crossing he did not attempt to stop his truck until he was approximately one hundred feet (100') from the crossing. In any event, at the speed he was traveling and with the load he was carrying he knew that he could not stop within a distance less than one hundred (100) to one hundred fifty (150) feet and his own evidence is that he did not look for the train until he was approximately one hundred feet (100') from the crossing.

10. Therefore, if the plaintiff's own evidence is accepted as true, he knew that his view was obstructed until he was approximately one hundred feet (100') east of the crossing, knew that at a speed of twenty-five (25) to thirty (30) miles per hour he could not stop his truck in less than one hundred (100) to one hundred fifty (150) feet and yet he did not reduce his speed nor look for a train until he was approximately one

hundred feet (100') from the crossing, at which point and traveling at his admitted speed it was too late to stop his truck within the remaining distance to the crossing.

## CONCLUSIONS OF LAW

1. There is no evidence of an excessive or dangerous rate of speed on the part of the railroad company. Indeed, the speed of the plaintiff's truck as it approached the crossing was greater or, as admitted by the plaintiff, at least equal to that of the train.

2. The evidence favors the defendant in that the required warning signals were sounded by the engine as the train approached the crossing.

3. The crossing was equipped with a standard crossing warning sign. Although some question was raised as to the proper location of this sign and the existence of an additional warning sign erected by the highway department approximately four hundred eighty-five feet (485') east of the crossing, these issues are immaterial in view of the plaintiff's admitted familiarity with the crossing.

4. The crossing was not equipped with gates, automatic flashers, watchmen or other such means. There is, however, no duty on the part of the railroad company to provide more than the standard crossing sign required by Section 4955.33 of the Revised Code, unless the crossing in question is "especially dangerous" or "extra-hazardous." Hood v. New York, Chicago & St. Louis Railroad Co., 166 Ohio St. 529, 144 N.E.2d 104 (1957).

5. Under the circumstances of the present case, the crossing in question could not be considered "especially dangerous" or "extra-hazardous", and, therefore, there was no duty upon the railroad company to provide any gates, signal devices, watchmen or other extra statutory means of warning of approaching trains.

6. There is no evidence of any negligence on the part of the defendant which could be considered a proximate

cause of the accident in question and on this basis alone the Court would be required to render a verdict for the defendant.

[4] 7. The evidence shows that there was a point of safety, approximately two hunderd twenty feet (220') from the crossing where the plaintiff could have seen the approaching train and stopped his truck before going upon the track. He admittedly failed to listen for an approaching train and he proceeded past that point of safety—due either to a failure to look or excessive speed—and he collided with the approaching train. Such conduct on the part of an operator of a motor vehicle is negligence as a matter of law.

8. Even if the plaintiff's own version is accepted as true, it establishes that he was negligent as a matter of law. According to his own testimony, his view was obstructed until he was approximately ninety (90) to one hundred (100) feet from the crossing, but he nevertheless approached this point of unobstructed view at a speed of twenty-five (25) to thirty (30) miles per hour which he knew would prevent him from stopping his truck in a distance less than one hundred (100) to one hundred fifty (150) feet. An operator of a motor vehicle which passes a point of visibility at a rate of speed which prevents him from stopping in time to avoid a collision if a train is approaching is clearly guilty of negligence as a matter of law.

9. The plaintiff's own negligence establishes that he was guilty of negligence in the operation of his truck as he approached the crossing, and such negligence was a proximate cause of the accident in question.

## JUDGMENT

Based upon the evidence in this case and the law applicable thereto, the Court hereby on the law sustains the motion of the defendant at the conclusion of all of the evidence, thereby rendering a verdict in favor of the defendant and against the plaintiff herein.

In the alternative, based upon the evidence in this case and the law applicable thereto, sitting as a jury the Court hereby finds in favor of the defendant and against the plaintiff. Judgment so entered. Costs assessed against the plaintiff.

No formal entry required.